IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| SHAHEEN CABBAGESTALK, #295567, | ) Civil Action No. 3:11-508-TMC-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER AND RECOMMENDATION** |
| SGT. S. TERRY, AND | ) |
| SGT. COTTER, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

Plaintiff, Shaheen Cabbagestalk, filed this action on March 7, 2011.[1]  Plaintiff appears to

have brought this action pursuant to 42 U.S.C. § 1983 ("§ 1983").  His allegations concern incidents

that occurred at the McCormick Correctional Institution ("MCI") and the Perry Correctional

Institution ("PCI") of the South Carolina Department of Corrections ("SCDC").  Plaintiff is currently

incarcerated at PCI.  On March 28, 2011, the undersigned recommended that the complaint be

summarily dismissed as to all Defendants, except for Defendants Sgt. S. Terry ("Terry") and Sgt.

Cotter ("Cotter").  See Doc. 9.  On April 27, 2011, the Honorable Sol Blatt, Jr., Senior United States

District Judge, adopted the report and recommendation and dismissed this action without prejudice

as to all defendants except Defendants Terry and Cotter.  See Doc. 16.[2]

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) DSC.  Because
these are dispositive motions, the report and recommendation is entered for review by the court.

[2]On October 18, 2011, this case was reassigned to the Honorable Timothy M. Cain, United
States District Judge.

Plaintiff has filed various motions including motions for temporary restraining orders, for "separation," for default, and various other requests for relief, as discussed further below. Defendants filed a motion for summary judgment on September 6, 2011. Because Plaintiff is proceeding pro se, he was advised on September 8, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed responses on October 13, November 15, and December 19, 2011.[3]

## MOTIONS FOR DEFAULT JUDGMENT

On June 7, 2011, Plaintiff filed a motion (Doc. No. 20) titled "Request permission to enter summary judgment for the 2nd time." He appears to be requesting that default be entered because Defendants had not filed an answer at that time. On July 22, 2011, Plaintiff filed a motion (Doc. No. 27) in which he argues that Defendants are in default, and he is entitled to summary judgment. On July 26, 2011, Plaintiff filed a motion (Doc. No. 31) for default judgment against Defendants. He claims that Defendants failed to timely serve their answer on or before July 4, 2011. On August 17, 2011, Plaintiff filed a motion (Doc. No. 43) titled "Motion for Summary Judgment." This motion, however, appears to be a motion for default. Plaintiff argues that Defendant Terry did not timely file his answer, and that Defendant Cotter has not filed an answer. Defendants contend that these motions should be denied because, contrary to Plaintiff's arguments, they both timely filed an answer.

---

[3]Plaintiff's other motions and supporting materials were also considered in preparing the report and recommendation as to Defendants' motion for summary judgment.

Defendants were served on June 14, 2011.  <u>See</u> Docs. 32 and 33.  Rule 12 provides that generally a defendant must serve an answer within twenty-one days after being served with the summons and complaint.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(A)(i).  Here, Defendants timely filed their answer (within twenty-one days of service) on July 5, 2011.  <u>See</u> Doc. 21 (Answer of Defendants Terry and Cotter).  Thus, it is recommended that Plaintiff's motions for default and/or for summary judgment be denied.

## MOTIONS FOR TROS/PRELIMINARY INJUNCTIONS/TO ENFORCE/FOR SEPARATION

On March 7, 2011, Plaintiff filed a motion (Doc. 2) for a temporary restraining order ("TRO"), requesting that he be released from SCDC custody and placed into the custody of the Dillon County Jail (a non-SCDC facility).  He argues that he was accepted into SCDC pursuant to an invalid commitment order.  He also asks that he be "red flagged" from PCI until "Major Bush" retires, quits, or is fired.  On April 28, 2011, Plaintiff filed a "Motion to Enforce T.R.O." Doc. No. 19.  He requests that he be taken away from Major Dennis Bush because Bush allegedly continuously locks down his dorm, harasses him, and tries to provoke him to do something crazy to trap him and put him in lock up.  On July 26, 2011, Plaintiff filed a motion (Doc. No. 30) for "permanent separation" from PCI .  He claims that correctional officers (who are not parties to this action) are allegedly conspiring against him to keep him on lock-up by writing false charges against him and are putting chemicals, pills, or poison in his food, causing him illness.  He also claims that other persons (who appear to be SCDC employees, but are not parties to this action) have tampered with his mail and are not processing his grievances.   On August 5, 2011, Plaintiff filed another motion (Doc. No. 39) for a permanent separation from PCI.  He reiterates his claims and asserts that Defendant Terry put out a paid hit to have Plaintiff killed.  He appears to allege that correctional

3

officers at PCI (who are not parties to this action) are racist and have been hiding him from the wardens so they will not see his poor health condition.  In his August 17, 2011 motion for summary judgment, Plaintiff also requests separation.  See Doc. No. 43.  In his August 24, 2011 motion to compel, Plaintiff again requests the court to enforce a separation.  See Doc. No. 49.  In his September 8, 2011 motion to enforce (Doc. No. 64), Plaintiff again requests that he be sent back to the Dillon County Jail.  On December 19, 2011, Plaintiff filed a motion (Doc. No. 89) in which he appears to be requesting that the Court enforce the above requested motions for TROs.

Defendants have filed numerous responses to Plaintiff's motions.  They contend that Plaintiff has not demonstrated the likelihood of his success on the merits as to the underlying lawsuit and has not alleged any facts demonstrating a present threat to him.  Defendants argue that Plaintiff has previously litigated (in this Court - see Civil Action Nos. 3:07-2313-SB , 3:08-63-SB, 3:08-3982-SB, and 3:09-1834-SB) his claims of alleged false imprisonment and his request to be transferred to Dillon County Jail, his claims in this action concerning these issues were previously dismissed, and such claims are barred because Plaintiff has not shown that his criminal conviction has been overturned.  They contend that Plaintiff has no right to be placed in a particular institution, any claims of retaliation are speculative, his separation requests are vague and not against any Defendants to this action, Plaintiff has been provided with adequate legal materials, they have already responded to Plaintiff's allegations concerning his alleged lost legal materials, and they have provided Plaintiff (through discovery) with copies of his property inventory forms.

The undersigned construes the  motions listed above as motions for preliminary injunctions.  As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that:

4

(1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

The majority of Plaintiff's requests in these motions concern issues not alleged in the complaint and are against individuals who are not parties to the action.  Further, he has presented nothing to support his claims that these persons have placed substances in his food which are causing him illness and has shown no injury from such.  To the extent Plaintiff is asking in his motions that he be released from SCDC custody, such a request is barred under Heck v. Humphrey, 512 U.S. 477 (1994)[4] as he has not shown that his underlying conviction (for armed robbery) has been overturned or otherwise impugned.  Any claims concerning these disciplinary proceedings are barred by Heck and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits).  To the extent that Plaintiff is alleging denial of access to the courts, he has not shown any actual injury.  See Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey, 518 U.S. 343 (1996).  Contrary to his claims of a lack of legal materials and an inadequate library, Plaintiff has been able to file numerous lawsuits and has filed numerous motions and responses in this action.  Plaintiff cannot show a constitutional violation based on his custody classification or institutional placement.[5]  His bare assertions of retaliation do not establish a claim

---

[4]In Heck v. Humphrey, the Supreme Court determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.  Id. at 487.

[5]Generally, prisoners do not have a constitutionally recognized liberty interest in a particular
(continued...)

of constitutional dimensions. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). To the extent Plaintiff is complaining about the processing of his grievances, he fails to show a constitutional violation, as access to administrative remedies is not itself a constitutionally protected right. See id., Flick v. Alba, 932 F.2d 728, 729 (8th Cir.1991). Further, allegations that SCDC employees are not following SCDC policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

---

[5](...continued)
security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976). In Sandin v. Conner, 515 U.S. 472 (1995), the United States Supreme Court held that a change in the condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a federally-protected liberty interest only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483. In Sandin, the Court concluded that the plaintiff's "segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Id. at 485. Under the analysis set forth in Sandin, Plaintiff cannot show that he has a protected liberty interest in his security or custody classification. Id. at 483-85; see Backey v. South Carolina Dep't. of Corrections, 73 F.3d 356, 1996 WL 1737 (4th Cir. Jan. 3, 1996)[Table](allegations of wrongful placement in administrative segregation do not involve the kind of significant or atypical hardship necessary to invoke due process rights); Joseph v. Gillespie, 73 F.3d 357, 1995 WL 756280 (4th Cir. December 21, 1995)[Table]("Administrative segregation is not an 'atypical and significant hardship' relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure."); Reffritt v. Nixon, 917 F. Supp. 409, 412 (E.D.Va. 1996)(plaintiff has no protected interest in remaining in or being released into general population), aff'd, 121 F.3d 699 (4th Cir. 1997).

Plaintiff fails to show that he is entitled to relief under the factors set out in <u>Winter</u>. He is unlikely to be successful in the underlying dispute (as discussed in the "MOTION FOR SUMMARY JUDGMENT" section) below. Plaintiff also fails to show that he will suffer irreparable injury if he is not granted a preliminary injunction. Additionally, he has not shown that the balance of equities tips in his favor or that an injunction is in the public interest. Thus, it is recommended that Plaintiff's motions for TROs, preliminary injunctions, enforcement, and/or separation be denied.

### MOTION TO AMEND

In his September 8, 2011 motion (Doc. No. 64), Plaintiff again requests that he be allowed to amend his complaint to add the maker of "MK9 mace" as a defendant to this action. He, however, has not submitted a proposed amended complaint. His motion is, therefore, denied. Additionally, his motion is denied for the reasons stated in the undersigned's October 6, 2011 order in which Plaintiff's previous motion to amend was denied. <u>See</u> Doc. 74.

### MOTION TO COMPEL/FOR RECUSAL/FOR TRO

On August 24, 2011, Plaintiff filed a motion to compel discovery and to enforce a separation (Doc. No. 49). In his motion, he also appears to ask that the undersigned recuse himself from this action. For the reasons discussed above, it is recommended that Plaintiff's motion be denied to the extent that it is a motion for a TRO. Plaintiff's motion to compel is denied because Plaintiff failed to provide the required supporting documentation (the relevant discovery requests and responses) with his motion. The Local Rules require that "[t]he relevant discovery requests and responses, if any, shall be filed as supporting documentation." Local Civil Rule 37.01(B) DSC. Further, to the extent that Plaintiff is requesting that the Court conduct discovery for him, his request is denied as the Court generally does not enter the discovery process, which is governed by the Federal Rules of

Civil Procedure. <u>See</u> Rules 26 through 37, generally; <u>see also</u> Rule 45. A plaintiff is required to direct his discovery requests to the appropriate parties in the manner contemplated by the Federal Rules of Civil Procedure. Further, as discussed in the undersigned's October 6, 2011 order, Defendants have substantially complied with those of Plaintiff's discovery requests which were timely served. <u>See</u> Doc. 74.

Plaintiff also appears to be requesting that the undersigned recuse himself from this action because Plaintiff believes the undersigned has prejudiced him by "not thoroughly examining the complaint and exhibits and enforcing the Defendants to compel the documents[] [he] requested." Plaintiff has not provided a legal basis for his motion. To the extent that he is requesting recusal under 28 U.S.C. §§ 144 and/or 455,[6] he fails to set forth any evidence of personal bias or prejudice on the part of the undersigned. None of Plaintiff's arguments present evidence of personal bias "from an extra-judicial source." <u>In re Beard</u>, 811 F.2d at 827. A judge need not recuse himself because of "unsupported, irrational, or highly tenuous speculation." <u>United States, v. DeTemple</u>, 162

---

[6] While 28 U.S.C. § 144 "provides a procedure by which a party can timely file an affidavit stating the presiding judge's personal bias or prejudice," 28 U.S.C. § 455 is "self-executing." <u>In re Beard</u>, 811 F.2d 818, 827 n.15 (4th Cir. 1987). Under section 455, a judge must recuse himself where the judge's impartiality "might reasonably be questioned," or where the judge has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a) and (b). The inquiry is an objective one, focusing on whether an outside observer with knowledge of all of the circumstances might have some reasonable basis for questioning the judge's impartiality. <u>See</u> <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 583 (1966); <u>United States v. Morris</u>, 988 F.2d 1335, 1337 (4th Cir. 1993)(citing <u>Rice v. MacKenzie</u>, 581 F.2d 1114, 1116 (4th Cir. 1978)). When no reasonable basis exists for questioning the judge's impartiality, it is improper for a judge to recuse. <u>United States v. Glick</u>, 946 F.2d 335, 336-37 (4th Cir. 1991).

Absent extraordinary circumstances, the source of the appearance of impropriety must be non-judicial. <u>Grinnell</u>, 384 U.S. at 583; <u>Morris</u>, 988 F.2d at 1337 (citing <u>In re Beard</u>, 811 F.2d at 827). In other words, "[t]he alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." <u>United States v. Grinnell Corp.</u>, 384 U.S. at 583 (citing <u>Berger v. United States</u>, 255 U.S. 22, 31(1921)).

F.3d 279, 287 (4th Cir. 1998).  Further, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  Liteky v. United States, 510 U.S. 540, 555 (1994).

## MOTION TO SUPPRESS

On September 8, 2011, Plaintiff filed a motion (Doc. No. 65) titled "Request of an Answer to Asservation [sic] and Declaration of Status, Notice of Rights, Abatement sent to Defendants['] Lawyers/Suppress all they've said frivilous [sic]."  Plaintiff appears to be making arguments about his underlying conviction pursuant to the Uniform Commercial Code ("UCC").  He also appears to claim entitlement to "diplomatic immunity."  Plaintiff has presented nothing to show that the UCC is applicable to this action or that he is entitled to or that diplomatic immunity is relevant to this action.  Plaintiff's motion is, therefore, denied.

## DISCUSSION

The only claims remaining in this action are those asserted against Defendants Terry and Cotter.  Plaintiff appears to allege that Defendant Terry filed false charges against him on September 27, 2010, threatened to have him killed, and used excessive force against him on October 13, 2010.  He alleges that Defendant Cotter deliberately lost Plaintiff's legal documents after Plaintiff was transferred from MCI to PCI.  Plaintiff may also be claiming that Cotter interfered with Plaintiff's right to the grievance process.  Defendants contend that they are entitled to summary judgment because:  (1) any allegations concerning disciplinary proceedings and the outcome of those proceedings are barred as Plaintiff has not shown he successfully attacked the disciplinary hearing convictions; (2) Plaintiff's allegations of the use of excessive force and abuse on October 13, 2010 are vague, wholly conclusory, and unsupported by any specific facts; (3) Plaintiff's allegations

against Defendant Cotter fail because he has no constitutional right to a grievance procedure; (4)

Plaintiff's allegations regarding lost paperwork are conclusory, lack evidentiary support, and are

speculative as Plaintiff's PCR hearing was still pending at the time Plaintiff filed this action; (5)

Plaintiff's claims of a deprivation of property fail because he cannot offer any evidence indicating

an intentional act and his claims do not rise to the level of a constitutional violation; (6) Plaintiff

failed to exhaust his available administrative remedies as to the alleged incidents; (7) Defendants are

not "persons" under § 1983 to the extent that Plaintiff has sued them in their official capacities; (8)

Defendants are entitled to qualified immunity in their individual capacities; and (9) any state law

claims are barred under the South Carolina Tort Claims Act.

      1.    <u>Exhaustion of Administrative Remedies</u>

        Defendants contend that their motion for summary judgment should be granted

because Plaintiff failed to exhaust all of his administrative remedies as to his alleged claims prior to

bringing this action.  Angela Hardin ("Hardin"), Inmate Grievances Administrator for SCDC, states

that Plaintiff failed to submit a Step 2 Grievance on any of his allegations in this action,[7] other than

one grievance which is currently pending (a grievance concerning Plaintiff's assertion that Cotter lost

---

[7]The Court may take judicial notice of SCDC Policy GA-01.12.  As noted in <u>Jones v. Kay</u>, No. 07-3480, 2007 WL 4292416 (D.S.C. December 05, 2007), the time limits of this policy are summarized as follows:

> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident; (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system; (3) the Warden should respond to the grievant in writing within forty (40) days; (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 grievance plus five (5) days for the grievant to be served.

<u>Id.</u> at *5; <u>see also</u> Hardin Aff.

his legal paperwork).  She further states that Plaintiff has been informed of the procedure to exhaust his available administrative remedies.  See Hardin Aff. and Copies of Plaintiffs' Grievances (Attachments to Defendants' Motion for Summary Judgment).

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's, 42 U.S.C. § 1997, exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Porter, 534 U.S. at 532.  The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant.  That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies."  Id. at 683.

A prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation.  Exhaustion is a prerequisite to suit that must be completed prior to filing an action.  See Anderson v. XYZ Correctional Health Servs., Inc., 407 F.3d at 677, see also Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001) (holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress'

directive to pursue administrative remedies prior to filing a complaint in federal court."), overruled on other grounds by <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002); <u>Jackson v. Dist. of Columbia</u>, 254 F.3d 262, 268-69 (D.C.Cir. 2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of the federal suit); <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir.1999) (An inmate incarcerated in a state prison must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983.); <u>Perez v. Wisconsin Dep't of Corr.</u>, 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment.").

Defendants have presented evidence that Plaintiff failed, prior to bringing this action, to exhaust his administrative remedies as to any of the remaining claims in this action. Although Plaintiff appears to argue that SCDC failed to properly follow its own grievance policy, he has presented nothing to contradict Defendants' evidence and he fails to present anything to show he appealed any grievances on the issues alleged in this action through Step 2 of the grievance policy.[8]

2.    <u>Disciplinary Charges</u>

Plaintiff alleges that Defendant Terry falsely filed charges against him alleging that Plaintiff threatened to harm Terry. Plaintiff claims that he merely refused to get into an unsanitary shower. Defendants have provided evidence showing that Plaintiff was found guilty on disciplinary

---

[8]It is recommended that Defendants' motion for summary judgment be granted on the merits, as discussed below. Alternatively, it is recommended that this action be dismissed because Plaintiff failed to exhaust his administrative remedies.

charges as to the September 27, 2010 incident for Plaintiff threatening Terry, and as to the October 13, 2010 incident. They argue that Plaintiff's claims concerning his disciplinary charges are barred because he has not shown that he successfully attacked his disciplinary convictions.

Plaintiff's claims concerning his disciplinary proceedings are barred by Heck v. Humphrey, 512 U.S. 477 (1994)[9] and Edwards v. Balisok, 520 U.S. 641 (1997)(Heck precludes a § 1983 claim in a prison disciplinary hearing which has not been previously invalidated, where the challenge would necessarily imply the invalidity of the deprivation of good-time credits); see also Kerr v. Orellana, 969 F. Supp. 357 (E.D.Va. 1997)(holding that prisoner's § 1983 claim for monetary damages and injunctive relief related to his disciplinary hearing was precluded under Heck). He has not shown he successfully attacked any of these disciplinary hearing convictions. Plaintiff cannot maintain a § 1983 action, whether for restoration of good-time credits, monetary damages, or injunctive relief related to the hearing, if a judgment in his favor would necessarily imply the invalidity of the outcome of the disciplinary proceeding(s). Here, the awarding of damages and/or injunctive relief to Plaintiff would necessarily imply the invalidity of the outcome of his disciplinary hearing(s) and thus his claims are barred under Heck and Edwards.

3.    Threats

Plaintiff alleges that Defendant Terry threatened to kill him. Defendants contend that Plaintiff's allegations concerning threats are vague, wholly conclusory, and unsupported by any specific facts. Terry denies threatening Plaintiff. See Terry Aff.

---

[9]The Supreme Court, in Heck v. Humphrey, 512 U.S. 477 (1994) determined that where a prisoner files an action under § 1983 which would necessarily implicate the validity of his conviction, he may not pursue the damages claim unless and until he successfully attacks the conviction on which his suit is based.

13

Defendants should be granted summary judgment as to this claim.  Verbal abuse of inmates by guards, without more, fails to state a claim under § 1983.  Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)(disrespectful and assaultive comments did not violate Eighth Amendment); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(verbal threats and name calling are usually not actionable under § 1983); Northington v. Jackson, 973 F.2d 1518, 1524 (10th Cir. 1992); Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979)(sheriff's idle threat to hang a prisoner did not give rise to a § 1983 claim); Lamb v. Hutto, 467 F. Supp. 562 (E.D.Va. 1979)(verbal assaults and threats do not state a constitutional claim actionable under § 1983).

4.     Excessive Force

Plaintiff appears to allege that he was subjected to excessive force on October 13, 2010, because Defendant Terry maced him and punched him in the face through the service flap. Complaint at 3.  Defendants contend that they are entitled to summary judgment as to this issue because Plaintiff's allegations are vague, wholly conclusory, and are unsupported by any specific facts.  They also argue that Plaintiff fails to establish the subjective component of his excessive force claim.  In support of this, Defendants have submitted an affidavit from Defendant Terry, the use of force report, the incident report, and the disciplinary report and hearing record (showing that Plaintiff was convicted on charges of threatening to inflict harm on staff and refusing or failing to obey as to the alleged incident).  See Attachments to Defendants' Motion for Summary Judgment.

The "unnecessary and wanton infliction of pain," constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992); Whitley v. Albers, 475 U.S. 312, 319(1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977).  To determine whether a prison official has violated the Eighth Amendment, courts must analyze both subjective and objective

14

components.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Specifically, this analysis requires "inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)."  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996).  "What is necessary to establish an unnecessary and wanton infliction of pain" with regard to each component "varies according to the nature of the alleged constitutional violation."  Hudson, 503 U.S. at 5 (internal quotation marks omitted).

To satisfy the subjective component of an excessive force claim, a plaintiff must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline.  Whitley, 475 U.S. at 320-21; see also Wilkins v. Gaddy, __ U.S. __, 130 S.Ct. 1175 (2010).  The objective component of an excessive force claim is not nearly as demanding as the subjective component, because "[w]hen prison officials maliciously and sadistically use force to cause harm' ... 'contemporary standards of decency are always violated ... whether or not significant injury is evidence.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " Wilkins v. Gaddy, __ U.S. at ___, 130 S.Ct. at 1178 (quoting Hudson, 503 U.S. at 7).  The Supreme Court has directed that several factors should be balanced in determining whether prison officials acted maliciously and sadistically.  These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the

15

basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Whitley, 475 U.S. at 321.

Plaintiff fails to show that the alleged uses of force constituted excessive force in violation of the Eighth Amendment such that summary judgment should be granted to Defendants on Plaintiff's excessive force claims.[10] First, there was a necessity for an application of force as to the alleged incident. Plaintiff previously threatened violence against Terry on September 27, 2010 (see incident report and disciplinary report and hearing record). Terry states that he was sent to move Plaintiff to another cell on October 13, Plaintiff refused a direct order to turn around to be handcuffed, and Plaintiff threatened to kill Terry. Terry states he sprayed 2.4 ounces of chemical munitions (mace) into Plaintiff's facial area to get Plaintiff to comply. Plaintiff fails to show that he suffered anything more than de minimis injury. He was examined by medical personnel after the incident, no injuries were noted, and he was allowed a shower. See Use of Force Report (signed by Nurse James, indicating no injuries). Here, Defendant Terry appears to have reasonably perceived a threat to safety and made efforts to temper the severity of force used by discharging a small amount of mace.

5.   Property Claims

Plaintiff alleges that Defendant Cotter lost his legal work and destroying two of his "legal" boxes. Complaint at 5.[11] Defendants appear to deny that any legal work was lost or

---

[10]Alternatively, such claims should be dismissed because Plaintiff failed to exhaust his administrative remedies.

[11]In his objections to the undersigned's March 2011 report and recommendation, Plaintiff claimed that Cotter threw away his Rastafarian beads because they were larger than the size SCDC's religious policy allowed. Plaintiff claims that the beads were never measured. This claim was not included in Plaintiff's complaint and does not appear to properly be before the Court. Even if it is,
(continued...)

destroyed based on the property inventory reports they have submitted.[12]  Additionally, they argue that Plaintiff fails to state a constitutional violation.

An intentional deprivation of property by a governmental employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. Hudson v. Palmer, 468 U.S. 517, 533 (1984); see Mora v. City of Gaithersburg, MD, 519 F.3d 216, 230–31 (4th Cir. 2008)(concerning the intentional taking of guns and ammunition from the plaintiff); Bogart v. Chapell, 396 F.3d 548, 561–63 (4th Cir. 2005)(intentional destruction of the plaintiff's animals did not violate the due process clause because South Carolina afforded a meaningful post-deprivation remedy for the loss of animals).

A prisoner in South Carolina may bring an action for recovery of personal property against an official who deprives him of property without state authorization. See McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir.1986) (citing S.C. Code Ann. §§ 15–69–10 et seq .). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." Id. (citing Parratt v. Taylor, 451 U.S. 527 (1981)); see also Samuel v. Ozmint, C/A No. 3:07–178–PMD, 2008 WL 512736 at *7 (D.S.C. Feb.25, 2008) (noting that claims related to the taking of personal property are cognizable under South Carolina state law); Greene v. Stonebreaker, C/A No. 9:06–3392–PMD, 2007 WL 2288123 at *6 (D.S.C. Aug. 6, 2007) (noting that a person in South Carolina has a remedy for personal property loss through the South Carolina Tort Claims Act).

---

[11](...continued)
Plaintiff fails to show that he exhausted his available administrative remedies as to such a claim.

[12]On a property inventory sheet dated January 23, 2011, Plaintiff acknowledged (by signing) that his property to be transferred from MCI to PCI included only one box of writing/legal material. On March 2, 2011, Plaintiff acknowledged that he had received "assorted legal"at PCI, although he did not receive a "box."

Further, Plaintiff alleges in his complaint that the property was "lost." Negligence, in general, is not actionable under 42 U.S.C. § 1983 or <u>Bivens</u>. <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 238-36 & n. 3 (1986); <u>Ruefly v. Landon</u>, 825 F.2d 792, 798-94 (4th Cir. 1987); <u>Pink v. Lester</u>, 52 F.3d 73, 78 (4th Cir. 1995). Furthermore, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. <u>DeShaney v. Winnebago Dep't. of Social Services</u>, 489 U.S. 189, 200-03 (1989).[13]

6.    <u>Grievances</u>

Plaintiff may be attempting to allege that Defendant Cotter obstructed his due process rights by interfering with the grievance process. Defendants contend that Plaintiff's claims concerning the grievance system fail to rise to the level of a constitutional deprivation.

To the extent that Plaintiff alleges claims concerning the processing of his grievances, his claims fail. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendant violated SCDC grievance procedures, such actions do not state a claim which is actionable under § 1983. <u>See</u> <u>Brown v. Dodson</u>, 863 F. Supp. 284 (W.D.Va. 1994).

7.    <u>Immunity</u>

Defendants assert they should be dismissed to the extent they are sued in their official capacities because in such capacity they are not "persons" under § 1983. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. <u>See</u>, <u>e.g.</u>, <u>Alabama v. Pugh</u>, 438

---

[13]To the extent that Plaintiff is alleging a denial of access to the courts due to the loss of legal paperwork, his claim also fails. He appears to claim that he was not able to prepare certain PCR filings because of the loss of paperwork. As pointed out by Defendants, however, such a claim is premature, as Plaintiff's deadline as to his PCR was not until well after this action was filed. Plaintiff fails to show any actual injury resulting from Defendant Cotter's alleged actions. <u>See</u> <u>Bounds v. Smith</u> and <u>Lewis v. Casey</u>, <u>supra</u>.

U.S. 781, 782 (1978) (per curiam) (citations omitted); Hans v. Louisiana, 134 U.S. 1, 10-11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir.1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office ... [and] is no different from a suit against the State itself," Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. Id. As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general

> or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

  8.  State Law Claims

    Defendants contend that any state claim claims are barred pursuant to the South Carolina Tort Claims Act. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

## CONCLUSION

    Based on review of the record, it is recommended that Plaintiff's motions for default judgment and/or summary judgment (Docs. 20, 27, 31, and 43) be **denied**; his motions for TROs/Requests for Separation/Motions for Preliminary Injunctions/Motions to Enforce (Docs. 2, 19, 30, 39, 43, 49, 64, and 89) be **denied**. It is also recommended that Defendants' motion for summary judgment (Doc. 53) be **granted**.

    **IT IS ORDERED** that Plaintiff's motion to compel and for recusal (Doc. 49) is **denied**, Plaintiff's motion to amend (Doc. 64) is **denied**, Plaintiff's motion to suppress (Doc. 65) is **denied**,

and Plaintiff's motion for a hearing (Doc. 86) is **denied**.

Joseph R. McCrorey
United States Magistrate Judge

January 17, 2012
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).